UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:16-cv-00367-MOC-DLH

| | | |
|---|---|---|
| **THEODORE HENDRICKSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | **ORDER** |
| | ) | |
| **NANCY A. BERRYHILL,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on review of a Memorandum and Recommendation issued in this matter. In the Memorandum and Recommendation, the magistrate judge advised the parties of the right to file objections within 14 days (plus three days for service by mail), all in accordance with 28, United States Code, Section 636(b)(1)(c). An Objection (#25) was filed by defendant within the time allowed and plaintiff included an Objection in his Reply (#26) to defendant's Objection. The issues having become ripe on March 16, 2018, with the filing of plaintiff's Reply, the Court has carefully considered the pleadings and enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.    Applicable Standard**

The *Federal Magistrates Act of 1979*, as amended, provides that "a district court shall make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Camby

1

v. Davis, 718 F.2d 198, 200 (4th Cir.1983).  However, "when objections to strictly legal issues are raised and no factual issues are challenged, *de novo* review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982).

Similarly, *de novo* review is not required by the statute "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Id.  Moreover, the statute does not on its face require any review at all of issues that are not the subject of an objection. Thomas v. Arn, 474 U.S. 140, 149 (1985); Camby v. Davis, 718 F.2d at 200. Nonetheless, a district judge is responsible for the final determination and outcome of the case, and accordingly the Court has conducted a careful review of the magistrate judge's Memorandum and Recommendation and conducted a *de novo* review on issues not reached in the recommendation.

## II. Discussion

### A. Background

Plaintiff, now a young adult, was receiving Supplemental Security Income ("SSI") based on his own disability as a child based on mental health impairments. When he turned 18 years old in 2012, the Commissioner revisited plaintiff's eligibility for benefits as required under 42 U.S.C. § 1382c(a)(3)(H)(iii) and 20 C.F.R. § 416.987.  In conducting that review, it was determined that plaintiff suffers from Asperger's Syndrome, depression, anxiety, and personality disorder, not otherwise specified. (Tr. 47).

Upon initial consideration, the agency determined that plaintiff was no longer disabled as of January 2013, which was upheld on reconsideration.  Plaintiff, with the

assistance of counsel, challenged that determination and requested a hearing by an ALJ. In September 2015, a hearing was held before an ALJ at which plaintiff, his father, and a vocational expert ("VE") testified. The ALJ issued an unfavorable administrative decision ("ALJDEC") (Tr. 42-54) the following month. Plaintiff then sought review by the Appeals Council, which upheld the ALJDEC decision a year later in 2016, (Tr. 1-5), making the ALJ's decision the final decision of the Commissioner.

This appeal was timely taken on November 9, 2016. In May 2017, plaintiff filed his Motion for Summary Judgment (#13), Memorandum in Support (#14), and Motion to Receive New and Material Evidence (#12). Issues ripened on July 14, 2017, when the Commissioner filed her responsive Motion for Summary Judgment (#18) and supporting Memorandum of Law (#19). Honorable Dennis L. Howell, United States Magistrate Judge, entered his Memorandum and Recommendation (#24) on those motions February 20, 2018. He advised the parties that they had 14 days from that decision to file Objections. Id. at 11.

The Court has given careful consideration to Judge Howell's Memorandum and Recommendation and to each Objection, and will conduct a *de novo* review as warranted. For the reasons that follow, the Court will sustain the Commissioner's Objection, overrule plaintiff's Objection, consider *de novo* other assignments of error raised by plaintiff, affirm the Commissioner, and dismiss this action.

### B.    The Recommendation

As to plaintiff's Motion to Receive New and Additional Evidence, Judge Howell recommended that such request be denied as the evidence submitted is not material to the

issues addressed in this action.  Further, Judge Howell recommends that plaintiff's request for a Sentence Six remand based on such evidence be denied.

In addressing the substance of the cross motions for summary judgment at pages eight and nine of the M&R, Judge Howell cites a decision by this Court's colleague in Switzer v. Colvin, No. 1:15-CV-212, 2016 WL 4182755 (W.D.N.C. July 5, 2016), which held that conclusory findings by an ALJ make meaningful review impossible. Id. at *4. Judge Howell determined that while the ALJ found that plaintiff suffered from several severe impairments at step two of the sequential evaluation process, such finding "does not come along with a discussion of the evidence relating to Plaintiff's mental impairments. (T. 33.)."[1]  M&R (#24) at 9 (emphasis in the original).  Likewise, Judge Howell also determined that the ALJ's step three severity determination was also deficient because there was "no discussion of Plaintiff's medical evidence and how it applied to listings 12.04, 12.06, 12.08, and 12.10. (T. 34.)"  Judge Howell then concludes that "Switzer is applicable and remand is necessary because the ALJ failed to show his work." Id.  Judge Howell recommends that the Court reverse the decision of the Commissioner and remand this action in accordance with Sentence Four.

For the reasons that follow, the Court agrees over plaintiff's Objection as to the proposed resolution of the Sentence Six request for remand based on new and material evidence.  As to the recommendation that a Sentence Four remand be granted on the cross Motions for Summary judgment, the Court will sustain the Commissioner's Objection as

---

[1]     The Court notes that Judge Howell's page citations are to the copy of the ALJ's decision submitted to the Appeals Council, not the official pages of the transcript where the "ALJDEC" resides.  This may be confusing as the briefs of the parties and this Order extensively cite the decision as it officially resides in the record.

it is apparent from the face of the decision that the ALJ explained his findings at length and cited the Court to the materials in the record that informed his decision. Finding that substantial evidence referenced by the ALJ supports his determinations, the final decision of the Commissioner will be affirmed.

### C.    Plaintiff's Objection

Plaintiff has objected to the magistrate judge's conclusion that a subsequent decision by another ALJ, granting plaintiff disability benefits for a later period, is not material to the time period at issue in this case and, therefore, does not provide a basis for a remand under Sentence Six of 42 U.S.C. § 405(g). See M&R (#24) at 6-8. Based on such conclusion, Judge Howell recommends that plaintiff's Motion to Receive New and Material Evidence (#12) be denied. Overruling plaintiff's Objection, the Court concurs with and fully affirms Judge Howell's determination for the reasons that follow.

As a procedural matter, the Court notes that plaintiff's Objection is included in his Reply to defendant's Objection. Inclusion of an Objection in a response or a reply is not sufficient to raise an Objection as it would typically fail to put the Court or the opposing party on notice that an Objection has been raised. See generally L.Cv.R. 7.1(c)(2) (motions not to be included in responses). The Objection included in the Reply is also not timely as the deadline for filing objections ran March 6, 2018, making plaintiff's March 16, 2018, Objection untimely. Putting aside those technical concerns, the Court has fully considered the merits of plaintiff's Objection.

In sum, plaintiff's Objection reasserts his argument that a favorable decision by another ALJ in December 2016 -- finding him disabled as of October 16, 2015 -- constitutes

new and material evidence. First, "a subsequent favorable decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g)." Baker v. Comm'r of Soc. Sec., No. 12-1709, 2013 WL 1866936, *1 n.* (4th Cir. May 6, 2013) (unpublished). Second, a remand is not warranted on the basis of a subsequent grant of benefits, by itself, since the subsequent grant of benefits could have been based on a new age classification, a worsening of the claimant's condition, or some other change. Allen v. Commissioner, 561 F.3d 645, 654 (6th Cir. 2009).

Moreover, the December 2016 decision is not material to the decision at issue here as the later decision covers October 16, 2015 (the date plaintiff stated he became disabled in that claim) through December 23, 2016 (the dated the second decision issued). The period at issue here is January 1, 2013 (the date on which plaintiff was determined in this matter to no longer be disabled) through October 15, 2015, the date the ALJ issued the unfavorable decision herein. The Sixth Sentence of 42, United States Code, Section 405(g) provides:

> The court may . . . at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.

42 U.S.C. § 402(g) (sentence six).

In <u>Wilkins v. Secretary, Dep't of Health & Human Servs.</u>, 953 F.2d 93 (4th Cir. 1991),[2] the Court of Appeals for the Fourth Circuit held that evidence is new if it "is not duplicative or cumulative," and is material "if there is a reasonable possibility that the new evidence would have changed the outcome." <u>Id.</u>, at 96. <u>See</u> <u>also</u> <u>Borders v. Heckler</u>, 777 F.2d 954, 955 (4th Cir. 1985). Even if a subsequent opinion in another claim could constitute "evidence," which it is not under <u>Baker</u>, such is not material as there is no reasonable possibility that such decision would have changed the outcome of this claim.

To the extent plaintiff is seeking to have the evidence supporting the subsequent decision considered here, he argues that a report from Dr. Marcus and a statement from Mr. Semcho are new and material evidence. Even if the Court considered Dr. Marcus's evidence "new," it is not material as it is dated October 2016 and provides a report on plaintiff's "present illness." While it is arguable that plaintiff's present illness or illnesses are the same illnesses he has suffered from his entire life, Dr. Marcus did not relate her opinions on plaintiff's functional limitations back to the period under consideration in this appeal. Thus, that report, while completely relevant in the subsequent action, is not material to the claim considered in this matter. The statement by Mr. Semcho fairs no better as such vocational opinion discusses the work accommodations plaintiff would need as of May

---

[2]        While the appellate court in <u>Wilkins</u> was addressing whether the Appeals Council properly addressed evidence which the claimant represented as new and material, the undersigned finds the <u>Wilkins</u> definitions instructive and appropriate in the circumstances presented by this case.

2016. The temporal incompatibility of that opinion to the issues in this action is made clear when Mr. Semcho opines that "Theo is not able to currently handle a full-time job."

Plaintiff's Objection is, therefore, overruled and the Court affirms Judge Howell's recommended disposition of the Sentence Six motion.

### D.     The Commissioner's Objection

In her Objection (#25), the Commissioner contends that Judge Howell erred in concluding that the ALJ failed to sufficiently explain his Step Two and Step Three conclusions. She argues that the ALJ did not make conclusory statements when considering the evidence, weighing medical source opinions, and evaluating plaintiff's subjective statements and complaints, but provided a detailed discussion of the longitudinal evidence and articulated adequate explanations for his findings. Objection (#25) at 7 (citing Tr. 49-53). In particular, the Commissioner objects to Judge Howell's conclusion, as follows:

> A review of the record reveals that the ALJ found that Plaintiff had several severe mental impairments. (T. 33.) This specific finding does not come along with a discussion of the evidence relating to Plaintiff's mental impairments. (T. 33.) At the next step in the sequential evaluation, the ALJ found that "[t]he severity of the claimant's mental impairments, considered singly and in combination, [did] not meet or medically equal the criteria of listings 12.04, 12.06, 12.08, 12.10 or any other listing under 12.00 of the listings." (T. 34.) Again, no discussion of Plaintiff's medical evidence and how it applied to listings 12.04, 12.06, 12.08, and 12.10. (T. 34.)

M&R (#24) at 9. In support of her Objection, the Commissioner provides specific reasons why those conclusions are in error.

### 1.     Step Two Determination

In reaching his decision, Judge Howell relied on this Court's colleague's decision in <u>Switzer</u>. While Judge Howell's reliance on <u>Switzer</u> is appropriate, the undersigned's

review is not controlled by the decision of another district judge, which is persuasive, but by the decision of the Court of Appeals for the Fourth Circuit in <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015), which this Court's learned colleague followed in <u>Switzer</u>. In <u>Mascio</u>, the Court of Appels for the Fourth Circuit held that the "ALJ's lack of explanation requires remand" when the "ALJ explain[ed] how he decided [the evidence] . . . [with a] vague (and circular) boilerplate statement." <u>Id.</u> at 640.

Judge Howell concluded that while the ALJ found at step two that plaintiff suffers from Asperger's syndrome, depression, anxiety, and personality disorder, not otherwise specified, "[t]his specific finding does <u>not</u> come along with a discussion of the evidence relating to Plaintiff's mental impairments." M&R (#24) at 9 (emphasis in the original). When the undersigned reads the ALJ's step two decision, it cannot come to the same conclusion. A sufficient explanation of the ALJ's step two determination is found on the face of the decision. First, the ALJ explained that those impairments were considered severe because they "result in significant functional limitations" (Tr. 47) and that he had "discussed thoroughly" the evidence supporting that determination elsewhere in the decision. <u>Id.</u> That referenced discussion is found at pages 49 through 53 of the Administrative Record.

Turning to the Objection, the Court agrees with the Commissioner that such discussion is indeed thorough and that an ALJ is under no obligation to discuss the same evidence repeatedly, <u>McCartney v. Apfel</u>, 28 F. App'x 277, 279 (4th Cir. 2002) (unpublished), but may incorporate or reference discussions found elsewhere in the decision in support of their determination. <u>Billups v. Barnhart</u>, 322 F. Supp. 2d 1220, 1225

(D. Kan. 2004); <u>Musall v. Chater</u>, No. 95-CV-494H, 1996 WL 200415, at *5 (W.D.N.Y. Apr. 2, 1996). Under <u>Mascio</u>, the important thing that must occur is that the ALJ must set forth the reasoning and point to the evidence which supports their conclusion, which allows for meaningful review by this Court. Here, the ALJ pointed to that rationale and the discussion of the evidence which fully supported his conclusion, which the Court readily found by flipping a page.[3] When that aspect of the decision is read, it is clear that the ALJ's step two determination that plaintiff suffers the severe mental impairments he lists is supported by substantial evidence. The examination report of clinical psychologist Dennis Hoogerman, Ph.D., (Tr. 503-11) was specifically referenced and discussed by the ALJ, (Tr. 50-51), and provides substantial evidence supporting the step two finding.

Thus, the Court will sustain the Commissioner's Objection and find that the ALJ in fact examined the relevant evidence, adequately explained his rationale, and cited to the evidence of record which provides substantial evidence supporting his step two determination.

### 2.    Step Three Determination

At step three, the ALJ concluded that the severity of the claimant's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04, 12.06, 12.08, 12.10 or any other listing under 12.00 of the listings. Again, Judge Howell found that there was "no discussion of plaintiff's medical evidence and how it applied to listings 12.04, 12.06, 12.08, and 12.10." M&R (#24) at 9.

---

[3]      The Court notes that a threshold finding at step two that a claimant suffers from severe mental limitations is a favorable determination for a claimant. As the Commissioner noted in her supporting Memorandum of Law (#17), plaintiff's mental impairment diagnoses are not disputed. <u>Id.</u> at 7.

When an ALJ makes a step three determination, however, the Social Security regulations provide that the ALJ is to use a "special technique" for evaluating the severity of a mental impairment. 20 C.F.R. § 416.920a. In applying that technique, the ALJ is charged with rating the degree of functional limitation resulting from impairments in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. Id. In conformity with the regulations, the ALJ's discussion -- which immediately followed the step three determination -- was substantial and complied with § 416.920a. The ALJ found, as follows:

> In activities of daily living, the claimant has moderate restriction. In activities of daily living, the record indicates that the claimant works, plays video games, gets on the computer, cares for his dog with reminders, puts dishes away, takes the garbage out, enjoys music, has friends, goes to church, vacuums, unloads the dishwasher, does laundry, walks by himself to church down the street from his home, volunteers, had a girlfriend at one time, and had his driving permit (Exhibits 1lF, 16F, and 20F). The claimant is capable of initiating and participating in a wide range of activities independent of supervision or direction. While his impairments may interfere with complex activities, his performance of a simple routine is appropriate, effective and sustainable.
>
> In social functioning, the claimant has moderate difficulties. He is able to initiate social contact, communicate clearly, participate in activities and demonstrate cooperative behaviors with little difficulty. With regard to concentration, persistence or pace, the claimant has moderate difficulties. He can sustain focused attention and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in routine and repetitive, not detailed or complex, work settings. As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration. The record fails to indicate significant, sustained loss of adaptive functioning.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The undersigned notes that the record shows no evidence of presence of the "C" criteria.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(Tr. at 48-49). Because the mental RFC evaluation provided for more detailed review of the evidence, the ALJ incorporated that extensive analysis as his basis for his paragraph B mental functional analysis concerning the *degree* of plaintiff's limitations at Step Three. As the ALJ recognized, that method of evaluation provides this Court with a more thorough discussion of the evidence supporting his Step Three determination. That discussion is found at pages 49-53 of the Administrative Record and it is exhaustive.

As the ALJ explained, to satisfy the "paragraph B" criteria of these Listings, a claimant must show at least two of the following: a marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (Tr. 48). The ALJ determined that plaintiff had a moderate restriction in activities of daily living, moderate difficulties in social functioning and with concentration, persistence, or pace, and no episodes of decompensation, each of extended duration (Tr. 48). He further found that the record shows no evidence of the presence of

the "paragraph C" criteria of the Listings. (Tr. 48). That RFC analysis included a discussion of the medical and non-medical evidence of record demonstrating that since January 1, 2013, plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations: he could perform simple, routine jobs with no more than occasional contact with co-workers, supervisors, and the public. (Tr. 49-53).

Based on that evaluation, the Court cannot agree with Judge Howell's conclusion that there was "no discussion of plaintiff's medical evidence and how it applied to [the] listings ….." M&R. Thus, the Court will sustain the Commissioner's Objection to Judge Howell's <u>Mascio</u> finding and determine from its *de novo* review that the ALJ in fact examined the relevant evidence, cited to that evidence, and adequately explained his rationale for his step three determination. The Court finds that the ALJ's step three determination is supported by substantial evidence of record, that the ALJ's decision adequately explained his rationale, and that the ALJ has properly referenced the portions of the record that support his determination, which has allowed for meaningful review by this Court.

### E.    Review of Additional Assignments of Error

As noted by Judge Howell, M&R (#24) at n. 8, plaintiff asserted three assignments of error. Judge Howell declined to address two of those assignments of error as he

considered the first assignment of error under <u>Switzer</u> dispositive.  The Court will now consider those assignments of error at the fourth step *de novo*.[4]

### 1.  Proper Determination of RFC

The ALJ is solely responsible for determining the Residual Functional Capacity (hereinafter "RFC") of a claimant.  20 C.F.R. § 404.1546(c).  In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments.  S.S.R. 96-8p.  Inasmuch as RFC is determined at the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he suffers from a physical or mental impairment which limits functional capacity.  <u>Halls</u>, 658 F.2d at 264. A claimant has the burden to prove the extent of his functional limitations; it is not the ALJ's burden to prove a lack of limitations. <u>See</u> <u>Radford v. Colvin</u>, 734 F.3d 288, 291 (4th Cir. 2013). Plaintiff argues that in determining RFC, the ALJ did not properly assess his non-exertional limitations.  He contends that the ALJ did not "conduct a function-by-function analysis of [his] work-related abilities." (Pl.'s Br. at 24). Plaintiff argues that the ALJ's determination was "boilerplate" and did not address the substance of the medical records.  Review of the ALJ's decision reveals that he discussed at length the treatment records and that his determination is not the boilerplate eschewed in <u>Mascio</u>.

---

[4]        The Commissioner's Objection (Obj. at n. 6) to Judge Howell's discussion of the burden of proof in note 2 of the M&R is noted and sustained.  The claimant has the burden of proof through the first four steps of the inquiry and the burden shifts to the Commissioner at step five. <u>Pass v. Chater</u>, 65 F.3d 1200, 1203 (4th Cir. 1995). Inasmuch as RFC is determined at the fourth step of the sequential evaluation -- which is at issue in this portion of the discussion -- the burden was on the claimant to establish that he suffers from a physical or mental impairment which limits functional capacity, <u>Hall v.  Harris</u>, 658 F.2d 260, 264 (4th Cir.  1981), not the Commissioner.

### (a)    Consideration of Medical Evidence

First, the ALJ noted that plaintiff received care at Family Preservation Services during the period from February 2011 through January 2014. (Tr. 50). The ALJ recognized that plaintiff suffered from Asperger's, anxiety disorder, NOS, and depressive disorder, NOS. Id.   The ALJ noted that plaintiff was prescribed Prozac and Abilify and that his physicians adjusted those medications as needed.   Id.   The ALJ then described the plaintiff's progression as noted by his providers. Id.   In particular, the ALJ noted that Dr. Johnson had found by January 2013 that Plaintiff was "doing pretty well." (Tr. 50).   The ALJ also discussed plaintiff's hospitalization in May 2014, but noted that he had not been taking his medications and once his medications were switched, plaintiff's condition improved and he was discharged.  (Tr. 51).   Based on such findings, the ALJ determined that during the period under consideration (January 1, 2013, through October 15, 2015), plaintiff was maintained on medications.  Id.  "If a symptom can be reasonably controlled by medication or treatment, it is not disabling" under the Act. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986).

Review of the ALJ's decision also reveals that the ALJ considered and discussed the medical opinion evidence in determining RFC. See 20 C.F.R. § 416.927(b) (as part of the disability determination, an ALJ must consider the medical opinions in the case record, together with the rest of the relevant evidence). The ALJ recognized a December 2014 "To whom it may concern" letter (Tr. 616) submitted by Jonathan Blalock,  who is an Autism Specialist, and Dr. Michele Villalobos, Ph.D., but noted that those sources did not provide opinions on specific functional limitations resulting from plaintiff's impairments. (Tr. 51,

53). The ALJ also recognized that the record contained opinions that pre-dated the period at issue, but he declined to give them any significant weight. (Tr. 52).

As mentioned earlier, the ALJ discussed the December 2012 consultative examination report (Tr. 503-511) submitted by clinical psychologist Dr. Dennis Hoogerman, Ph.D. (Tr. 50-51). Citing such report, the ALJ found that plaintiff's ability to understand, retain, and follow instructions appeared to be episodically moderately-severely limited, but that his ability to sustain attention and perform simple repetitive tasks appeared to be moderately limited. (Tr. 50). The ALJ gave great weight to Dr. Hoogerman's opinions (Tr. 53) and he incorporated limitations into his RFC determination that are wholly consistent with that cited evidence. Specifically, the ALJ included limitations of plaintiff to perform simple, repetitive task and limited him in his ability to relate to others. (Tr. 49-51, 53).

**(b)    Evaluation of Mental Health Evidence**

The ALJ's RFC discussion also included consideration of the RFC assessments prepared by state agency psychological consultants. The ALJ cited those reports (which in turn reviewed consultative reports), plaintiff's own reports of daily activities, and plaintiff's treatment and medication management records. (Tr. 52). Those records referenced by the ALJ or which support those records (Tr. 515, 529, 588, 589, 602) provide substantial evidence supporting the ALJ's conclusion that plaintiff could perform simple, routine job tasks, with no more than occasional contact with co-workers, supervisors, and the public. (Tr. 49).

Plaintiff also takes issue with the ALJ's failure to consider a report from Mr. Michael S. Grandis, M.A., who evaluated plaintiff on one occasion when he was 16 years old in 2010. (Tr. 407-16). While plaintiff argues that such report "describes serious mental health problems and behaviors beginning when [he] was 3 years old," (Pl.'s Br. At 18), plaintiff does not argue or cite to a provision of that opinion that would have bearing on, and should have been considered by the ALJ in fashioning, plaintiff's functional limitations as of his age-18 redetermination. While failure by the Commissioner to consider an entire line of evidence falls well below the minimal level of articulation required by the Social Security Act, Diaz v. Chater, 55 F.3d 300, 307 (7th Cir.1995), an ALJ is not tasked with the "impossible burden of mentioning every piece of evidence" that may be placed into the Administrative Record. Parks v. Sullivan, 766 F.Supp. 627, 635 (N.D.Ill.1991). Mere failure to cite to specific evidence does not mean that the evidence was not considered. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (citing 42 U.S.C. § 405(b)(1) and affirming an ALJ decision that contained a discussion of "the whole record," instead of a description of every piece of evidence in the record). While Mr. Grandis's report is not mentioned directly by the ALJ, it was clearly considered in the evaluations prepared by Drs. Hoogerman, Charles, and Hilts, on which the ALJ in turn explicitly and extensively relied. (Tr. 50, 52, 508, 529, 602).

### (c) Evaluation of Activities of Daily Living

Plaintiff also takes issue with the ALJ's consideration of his daily activities in determining RFC. Review of the decision reveals that the ALJ cited to specific daily activities of plaintiff, which at the time of the hearing in September 2015 included working

part time as a dishwasher at a local restaurant. <u>See</u> 20 C.F.R. § 416.972(a) (providing that work activity "may be substantial even if it is done on a part-time basis"). The ALJ clearly considered plaintiff's testimony concerning his part time job and plaintiff's statement that he could only work "maybe 30" hours per week because he "can get stressed a lot if [he works] too much." (Tr. 49, 64-65). The ALJ also clearly considered statements that he missed some days of work and went home early at times, possibly due to stress. (Tr. 49, 65). Plaintiff also admitted that his medication (Abilify) helped his stress symptoms. (Tr. 65). The ALJ also discussed plaintiff's other daily activities and the evidence that supported such findings, including that plaintiff played video games, used a computer, cared for his dog (with reminders), did household tasks (including vacuuming, washing laundry, putting away dishes, and taking out the garbage), enjoyed music (he played the trumpet), had friends, went to church, exercised at a gym, volunteered, and got a driving permit. (Tr. 51, 260-64, 505-06, 540, 559, 566-67). Furthermore, the ALJ considered the fact that plaintiff graduated from high school, and he was "in college and proud of it." (Tr. 50, 257, 542).

In <u>Hatcher v. Secretary</u>, 898 F.2d 21, 23 (4th Cir. 1989), the Court of Appeals for the Fourth Circuit held that

> the ALJ is required to make credibility determinations--and therefore sometimes make negative determinations-- about allegations of pain or other nonexertional disabilities. . . . But such decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge ….

<u>Id.</u> (citations and corresponding quotation marks omitted). As is apparent from the ALJ's decision, the ALJ clearly considered the evidence of record and cited to the evidence which

informed his decision. By reviewing that cited evidence, this Court determines that the ALJ's determinations based on plaintiff's activities of daily living during the relevant period are supported by substantial evidence.

### (d)    Evaluation of law Witness Evidence

Plaintiff also takes issue with the ALJ's not fully crediting lay witness statements from his parents. Under 20 C.F.R. § 404.1513(d), a plaintiff is permitted to submit evidence from "other sources":

> In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work.

Id. In Morgan v. Barnhart, 2005 WL 1870019 (4th Cir. 2005), the Court of Appeals for the Fourth Circuit addressed what consideration an ALJ must give to corroborative lay opinions submitted in accordance with Part 404.1513(d). There, the appellate court, while not reaching the issue (making such *dicta*), agreed that an ALJ could not simply discredit such lay evidence based on inherent familial bias; instead, the appellate court found that the ALJ, implicitly and properly, discredited such lay opinions as not consistent with the medical record and the functional capacity evaluation:

> In the order denying Morgan's claim, the ALJ found, in part because of Dr. Kirkley's opinion and the FCE, that "*the allegations* of disabling pain ⋯ [were not] credible." (R. at 16 (emphasis added).) The ALJ gave no indication that "the allegations" of disabling pain to which he was referring were only Morgan's allegations, and not also the allegations of Morgan's husband and daughter. Indeed, the most natural reading of the indefinite article "the" is that it refers to all, not just some, of the allegations of pain. We believe, therefore, that the ALJ discredited the questionnaire responses for the same reasons he rejected Morgan's own testimony; *i.e.,* Dr. Kirkley's opinion that Morgan's underlying condition did not cause her pain and the

FCE indicating that Morgan maintained the functional capacity to work an 8-hour day. And as we concluded with respect to Morgan's testimony, any error the ALJ made in crediting the other evidence on which the ALJ relied - - here, her activities, her lack of hospitalizations, the absence of significant side-effects, the opinion of Dr. Holford, and inherent familial bias - - was harmless, because Dr. Kirkley's opinion and the FCE were substantial evidentiary support for the ALJ's decision to discredit Morgan's husband's and daughter's observations.

Id., at **7. While the ALJ did mention the familial relationship in determining that they were not disinterested witnesses, (Tr. 53), any error in that determination is harmless as the ALJ also noted that plaintiff's parents are not medically trained to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms. Id. Further, the ALJ found that the parental opinions were not consistent with the preponderance of the opinions and observations made by medical doctors in this case. (Tr. 53). Under Morgan, the Court can find no error in the manner in which the ALJ considered the statements of plaintiff's parents.

### (f)    Consideration of Concentration, Persistence, and Pace

Plaintiff next takes issue with the ALJ's determination concerning his moderate difficulties with concentration, persistence, and pace. The ALJ concluded that could "sustain focused attention and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in routine and repetitive, not detailed or complex, work settings." (Tr. 48). Such determination is supported by citations to the opinions of Drs. Hoogerman, Charles, and Hilts, as discussed above (Tr. 50-52, 503-11, 515, 588-89). As in Ponder v. Berryhill, No. 1:15-cv-00289-RJC, 2017 WL 1246350

(W.D.N.C. Mar. 31, 2017), the ALJ here failed to use the words "stay on task" or "for a full workday or workweek." Id. at *4. But as in Ponder, it is demonstrable from the ALJ's thorough discussion that an ability to stay on task for a full workday is supported by the cited evidence. Id. Here, meaningful review has not been frustrated as it is clear from the ALJ's decision that he found plaintiff, at the time of decision, capable of performing a full workday based on the evidence which he cited and which is substantial. Thus, the ALJ adequately accounted for Plaintiff's moderate difficulties in concentration, persistence, or pace under Mascio.[5]

### (g)  Conclusion as to RFC Determination

In his decision, the ALJ addressed all relevant work-related functions and supported the RFC assessment with a narrative discussion of the evidence that is adequate for this Court to readily ascertain the ALJ's reasoning and conduct meaningful judicial review of that decision. Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016). Substantial evidence discussed and cited by the ALJ fully supports the RFC determination.

### 2.  Proper Consideration of Vocational Expert Testimony

Plaintiff argues the ALJ erred in his evaluation of the vocational expert's testimony (Pl.'s Br. at 20). In particular, plaintiff contends that the ALJ did not "specify the particular functional incapacities" of plaintiff when posing questions to the vocational expert. (Pl.'s

---

[5]  The Court also notes that the ALJ included limitations restricting plaintiff to jobs with no more than occasional contact with co-workers, supervisors, and the general public (Tr. 49), which are limitations that were not present in the RFC or hypothetical at issue in Mascio. See Reiser v. Colvin, No. 5:14-CV-850-FL, 2016 WL 1183092, at *8 (E.D.N.C. Mar. 28, 2016).

Br. at 20). Plaintiff does not specify what "functional incapacities" were omitted in the hypothetical relied upon by the ALJ.

Hypothetical questions posed by an ALJ to a vocational expert must fully describe a plaintiff's impairments and accurately set forth the claimant's non-exertional impairments. Cornett v. Califano, 590 F.2d 91 (4th Cir. 1978). Where the ALJ properly formulates his hypothetical to accurately reflect the condition and limitations of the claimant, the ALJ is entitled to afford the opinion of the vocational expert great weight. Shively v. Heckler, 739 F.2d 984 (4th Cir. 1984). Because plaintiff's conditions and limitations, as found in the RFC analysis, were accurately portrayed to the vocational expert, (Tr. 72-73), the ALJ did not fail to consider all the evidence, and his reliance on the opinion of the vocational expert that jobs were available to a person with plaintiff's limitations was proper. The fact that the ALJ did not accept all of the VE's opinions in making his disability determination is not dispositive, as the ALJ is not required to accept an opinion which is based on a question from plaintiff's counsel that was in turn based on testimony that the ALJ discredited.

Finally, plaintiff also takes issue with whether the hypothetical included all of his impairments, including those that were not severe. The ALJ specifically noted that he considered "the entire record" and he "considered all symptoms." (Tr. 49). To the extent the ALJ found work-related functional limitations that were supported by the record, he clearly included them in the extensive RFC finding, which was then adequately tracked in the hypothetical provided to the vocational expert. Thus, the ALJ properly relied on the vocational expert's testimony as providing substantial evidence to support a finding that

plaintiff was not disabled as of January 1, 2013. See Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989) (observing that "it is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities….").

### F.    Conclusion

The undersigned has carefully reviewed the Memorandum and Recommendation of Judge Howell, the Objections of the respective parties, the decision of the ALJ, the transcript of proceedings, plaintiff's Motion for Summary Judgment and brief, the Commissioner's responsive Motion for Summary Judgment and brief, and, in particular, plaintiff's assignments of error. While the Court will overrule in part and affirm in part the Memorandum and Recommendation, review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra, plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

***

Finally, the Court notes its concern for plaintiff's situation. Clearly, plaintiff has bravely battled his impairments throughout his life, worked hard to overcome them, and has had incredible support from family, medical professionals, and the community. The Court is pleased to read that plaintiff is now currently qualified to receive benefits, but hopes his condition will someday improve. Had this Court originally been faced with the

same question, it may well have reached the opposite result as the one reached by the Commissioner. This Court's review is, however, a narrow one and there is no relief this Court can afford for the closed period of January 1, 2013 through October 15, 2015, because the ALJ's determination is supported by substantial evidence.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Commissioner's Objection (#25) is sustained, plaintiff's Objection (found within #26) is overruled, the Memorandum and Recommendation (#24) is **AFFIRMED** in part and **REVERSED** in part, plaintiff's Motion to Receive New and Material Evidence (#12) is **DENIED**, plaintiff's assignments of error are **OVERRULED**, plaintiff's Motion for Summary Judgment (#13) is **DENIED,** the Commissioner's Motion for Summary Judgment (#18) is **GRANTED,** the final decision of the Commissioner is **AFFIRMED**, and this action is **DISMISSED**.

Signed: March 22, 2018

Max O. Cogburn Jr.
United States District Judge